# EXHIBIT 1

eFiled
02/01/2024 10:11:02 PM
Superior Court
of the District of Columbia

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION—CIVIL ACTIONS BRANCH**

**THOMAS J ALSTON**
4020 Southern Ave SE
Washington, DC 20020

Case No. 2024-CAB-000703

Plaintiff,

v.

**FIRST NATIONAL BANK OF PENNSYLVANIA**
Serve: The Corporation Trust Incorporated
2405 York Road, Suite 201
Lutherville Timonium, MD 21093

Defendant.

**COMPLAINT AND JURY DEMAND**

COMES NOW, the Plaintiff, Thomas J. Alston, and for his complaint against defendant First National Bank of Pennsylvania ("FNB of PA"), he alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for actual and statutory damages, costs and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA").

**PARTIES TO ACTION**

2. Plaintiff Thomas Alston is a natural person and a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

3. Defendant FNB of PA provides a full range of commercial banking, consumer banking and wealth management services plus industry leading online and mobile bank solutions.

**FACTUAL ALLEGATIONS**

4. In April 2023, Plaintiff opened a line of credit with FNB of PA.

5. FNB of PA reported the account to the three credit reporting agencies, including Equifax, Experian and Trans Union (hereinafter, the "CRAs")

6. In June 2023, Plaintiff's online access to his account was blocked.

7. Consequently, Plaintiff could not make his usual online payment.

8. Plaintiff called FNB of PA to process a payment over the phone.

9. However, the FNB of PA representative informed Plaintiff that he could not make a payment over the telephone for this account.

10. Plaintiff mailed his payment to FNB of PA, but the payment, which was a check, was never credited to his account.

11. Plaintiff called FNB of PA to discuss the situation with the July 2023 payment.

12. During the phone call it was revealed that FNB of PA mistakenly blocked Plaintiff's access to his online account because FNB of PA linked the wrong phone number to Plaintiff's account and that prevented his from being able to receive a passcode to his phone.

13. FNB of PA reported Plaintiff as late for his July 2023.

14. In its reporting of the July 2023 payment, FNB of PA did not mention that it was the cause of Plaintiff's payment not being credited in July 2023.

15. Plaintiff disputed the FNB of PA account with all three CRAs in August 2023.

16. FNB of PA received notice of Plaintiff's dispute from each CRA.

17. FNB of PA quickly processed the dispute and verified the disputed information as being reported accurately without making any corrections.

18. If FNB of PA had conducted a reasonable investigation, then FNB of PA would have discovered Plaintiff was not at fault for the July 2023 payment, but rather, it was FNB of PA was at fault for Plaintiff's payment not being credited in July 2023.

19. At a minimum, FNB of PA should have marked the account as disputed and used the comments section to explain the mitigating circumstances for the July 2023 payment.

20. Despite knowing that Plaintiff disputed the conclusions of FNB of PA's dispute results and knowing mitigating circumstances concerning the July 2023 payment, FNB of PA did not include any of the information when it reported the dispute results to the CRAs.

21. Plaintiff disputed the FNB of PA account again with the CRAs in September 2023.

22. FNB of PA repeated the same unreasonable steps in its investigation of this dispute.

23. In October 2023, Plaintiff sent another round of disputes to the CRAs.

24. FNB of PA did not change its process and verified the disputed information without conducting a reasonable investigation.

25. In his September and October disputes, the Plaintiff provided additional that clearly established FNB of PA was at fault for any the July 2023 payment not being credited.

26. FNB of PA either ignored the additional information or was careless when it reviewed the information.

27. As a result of FNB of PA's failure to correct the inaccurate and derogatory payment history for July 2023, the Plaintiff's credit limit with other creditors was substantially reduced after they received Plaintiff's report containing the late payment for FNB of PA.

28. The reduced credit limits caused Plaintiff's credit usage ratio to soar which reduced his credit score and damaged his overall credit profile.

29. Not only did Plaintiff lose existing credit but he no longer qualified for new credit.

30. This put Plaintiff between a rock and a hard place – he either had to find money to pay down his balances or do without credit and constantly worry about the next creditor that will reduce his credit limit.

**COUNT ONE: VIOLATIONS OF § 1681s-2(b)(1)(A) and (B)**
(FNBO and Wells Fargo)

44. Plaintiff realleges and incorporates paragraphs 1 through 43 of the Complaint.

45. The Furnisher Defendants, FNBO and Wells Fargo, violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

46. On one or more occasions within the past two years, by example only and without limitation, the Furnisher Defendants violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the CRAs.

47. When Plaintiff mailed her disputes to the consumer reporting agencies, they use a dispute system named "e-Oscar", which has been adopted by the CRAs and their furnisher customers such as FNBO and Wells Fargo. It is an automated system and the procedures used by the CRA's are systemic and uniform.

48. When the CRAs receive a consumer dispute, it (usually via an Indian outsource vendor), translates that dispute into an "ACDV" form.

49. The ACDV form is the method by which FNBO and Wells Fargo have elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

50. Based on the manner in which the CRAs responded – or did not respond to – each of the Plaintiff's disputes, representing that FNBO and Wells Fargo had "verified" the supposed accuracy of its reporting, Plaintiff alleges that the CRAs did in fact forward the Plaintiff's dispute via an ACDV to the FNBO and Wells Fargo.

51. FNBO and Wells Fargo understood the nature of Plaintiff's disputes when they received the ACDVs from the CRAs.

52. When FNBO and Wells Fargo received the ACDV's from the CRAs, they could have reviewed their own system and previous communications with Plaintiff and discovered additional substance of Plaintiff's dispute.

53. Notwithstanding the above, the FNBO and Wells Fargo followed a standard and systemically unlawful process when they received the ACDV disputes. Basically, all FNBO and

Wells Fargo do is review their own internal computer screen for the account and repeat back to the ACDV system the same information they already had reported to the CRAs.

54. When FNBO and Wells Fargo receive a consumer's dispute through e-Oscar, they do not conduct a substantive review of any sort to determine whether or not the information already in their computer system is itself accurate.

55. As a result of the Furnisher Defendants' violations of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

56. The violations by the Furnisher Defendants were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

57. The law in this District, and even nationally has long ago been set to require a detailed and searching investigation by a creditor when they receive a consumer's FCRA dispute through a CRA.

58. FNBO and Wells Fargo were aware of court decisions, such as *Johnson v. MBNA*, when they followed the ACDV procedures used regarding Plaintiff's dispute.

59. On information and belief Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that FNBO and Wells Fargo intended their employees or agents to follow.

60. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from FNBO and Wells Fargo in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT FOUR: VIOLATIONS OF § 1681s-2(b)(1)(C)-(E)**
(FNBO and Wells Fargo)

61. Plaintiff realleges and incorporates paragraphs 1 through 60 of the Complaint.

62. The Furnisher Defendants, FNBO and Wells Fargo, violated 15 U.S.C. § 1681s-2(b)(1)(C)-(E) by reporting the disputed accounts within Plaintiff's credit files with the CRAs without also including a notation that this debt was disputed and by failing to correctly report results of an accurate investigation to the CRAs, or deleting the disputed accounts.

63. Specifically, the Furnisher Defendants failed to add the "XB" code to the CCC (Compliance Condition Code) field and description of the dispute or mitigating circumstances in the ACDV dispute forms when they responded to the CRAs.

64. On information and belief, the Furnisher Defendants rarely if ever add the XB code or other notation that an account is disputed when it responds to e-Oscar ACDVs.

65. Plaintiff's dispute was, at a minimum, bona fide.

66. The violations by FNBO and Wells Fargo were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

67. FNBO and Wells Fargo were aware of the *Saunders v. Branch Banking & Trust* holding and other similar holdings by Circuit Courts when they followed the ACDV procedures used regarding the Plaintiff's dispute.

68. On information and belief, Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that FNBO and Wells Fargo intended their employees or agents to follow.

69. On information and belief, Plaintiff alleges that the employees or agents of FNBO and Wells Fargo did not make a mistake (in the way in which he or she followed their procedures) when they received, processed and responded to the CRAs' ACDVs and did not include the XB code in the CCC field or notating mitigating circumstances.

70. On information and belief, the Furnisher Defendants have not materially changed their FCRA investigation procedures regarding the CCC field or notating mitigating circumstances in ACDVs after learning of their failures in this case.

71. In the alternative, the Furnisher Defendants were negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

72. As a result of the Furnisher Defendants' violations of 15 U.S.C. § 1681s-2(b)(1)(C)-(E), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

73. The violation by the Furnisher Defendants were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the Furnisher Defendants were negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

74. The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from FNBO and Wells Fargo in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**WHEREFORE**, Plaintiff respectfully prays that the Court award actual damages; that the Court award maximum statutory and punitive damages; that the Court award costs and any reasonable attorneys' fees; and that the Court award prejudgment and post-judgment interest.

Respectfully submitted,

Thomas Alston

Thomas J. Alston
Pro Se Plaintiff
4020 Southern Ave SE
Washington, DC 20020
Tel: (202) 503-1305
talston@washlegal.com

P.O. Box 4624
Upper Marlboro, MD 20775

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL®**

9589 0710 5270 1042 1444 21

**Retail**

UNITED STATES POSTAL SERVICE

**RDC 99**

21093

U.S. POSTAGE PAID
FCM LG ENV
WASHINGTON, DC 20036
FEB 05, 2024

**$10.64**

R2305K133097-18

Corporation Trust Incorp
2405 York Road, Suite 201
Lutherville Timonium, MD 21093